UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ATLANTIC NEUROSURGICAL SPECIALISTS P.A.**, *et al.*  **Plaintiffs,**  v.  **UNITED HEALTHCARE GROUP INC.**, *et al.*  **Defendants.** | Civ. No. 20-13834 (KM)(JBC)  **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Two medical providers, Atlantic Neurosurgical Specialists, P.A. ("Atlantic Neuro") and American Surgical Arts, P.C. ("American Surgical") (together, the "Plaintiffs"), bring this action on behalf of themselves and four patients, C.L., F.L., P.T., and J.C. (together, the "Patients"). Those Patients were insured by health plans issued by one of the following defendants: UnitedHealth Group Inc.; United Healthcare Services, Inc.; United Healthcare Insurance Company; United HealthCare Services LLC; Oxford Health Plans, LLC; or Oxford Health Insurance, Inc. (collectively, "United"). United denied coverage, in whole or in part, of the medical services provided to each of the four patients by the Plaintiffs, who were out-of-network ("ONET") providers. Plaintiffs, as the patients' purported "authorized representatives," attempted to pursue an administrative appeal of those denials. United refused to hear the appeals, however, because Plaintiffs did not comply with United's procedures for selecting an authorized representative. Plaintiffs then initiated this action against United, submitting that its procedure for designating an authorized representative violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, and its accompanying regulations.

1

Plaintiffs also seek class certification of similarly-situated insureds whose appeals of adverse benefit determinations were denied by United.

Before the Court is United's motion to dismiss Plaintiffs' Complaint on the basis that (1) Plaintiffs lack Article III standing, (2) Plaintiffs lack standing under ERISA, and (3) Plaintiffs failed to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I agree that Plaintiffs have failed to establish standing under Article III and under ERISA, I will grant United's motion.

I. **Summary**[1]

   a. **Factual Allegations**

<u>Plaintiffs' Attempts to Appeal Patients' Adverse Benefits Determinations</u>

Atlantic Neuro, a neurosurgical practice in New Jersey, brings this action on behalf of itself and its patients C.L. F.L. and P.T. (Compl. ¶5.) Each patient received emergency treatment from an Atlantic Neuro provider and

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint (DE 1)

"Br." (DE 8-8) = Defendants' Brief in Support of Motion to Dismiss

"Opp." (De 13) = Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss

"Reply" (DE 14) = Defendants' Reply Brief in Support of Motion to Dismiss

"Supp. Letter 1" (DE 15) = Defendants' First Notice of Supplemental Authority

"Resp. 1" (DE 16) = Plaintiffs' Response to Defendants' First Notice of Supplemental Authority

"Supp. Letter 2" (DE 19) = Defendants' Second Notice of Supplemental Authority

"Resp. 2" (DE 20) = Plaintiffs' Response to Defendants' Second Notice of Supplemental Authority

subsequently received an adverse benefit determination by United related to that treatment. (*Id.* at ¶¶35, 38, 50, 53, 65, 67.) As a purported authorized representative, Atlantic Neuro sought first- and second-level administrative appeals contesting the amount paid by United. (*Id.* at ¶¶39, 43, 54, 58, 68, 72.) United declined to process the appeals, however, because the purported designation of authorized representative form ("DAR Form") submitted on behalf of each patient lacked required information. (*Id.* at ¶¶40, 44, 55, 59, 69, 73.)

Similarly, American Surgical, a plastic and reconstructive surgery practice in New Jersey, brings this action on behalf of itself and its patient J.C., who received an adverse benefit determination from United following services rendered by American Surgical. (*Id.* at ¶9, 80, 82.) As a purported authorized representative, American Surgical sought to pursue first- and second-level administrative appeals. (*Id.* at ¶¶ 83, 87.) United also declined to process those appeals because the DAR Form lacked required information. (*Id.* at ¶¶84, 88.)

The Complaint alleges that, prior to the filing of the administrative appeals, each patient executed an assignment of benefits and a DAR form in favor of Plaintiffs "with respect to any claims, appeals, and litigation associated with the procedure(s)." (*Id.* at ¶¶37, 53, 66, 86) Copies are annexed to the Complaint. (*See* Exhibits to the Compl. A through D.)

United's DAR Policy

United insures and administers health plans ("United Plans") that are governed by ERISA. In that role, it "receives, reviews, and processes benefits payments for services rendered by in-network and out-of-network medical providers like Atlantic Neuro and American Surgical." (*Id.* at ¶2.) Plaintiffs submit that ERISA, and the regulations promulgated thereunder, entitle beneficiaries of United Plans "to designate an authorized representative to aid them in the initial submission of an insurance benefits claim and then in any appeal following an adverse benefits determination." (*Id.* at 3.) Plaintiffs further submit that, particularly in the context of emergency medical treatment,

insureds often designate their medical provider as the authorized representative. (*Id.*) However, as alleged, "United has a uniform practice and procedure in place that makes it unreasonably difficult for medical providers to obtain benefits payments for covered claims." (*Id.* at ¶4.) In particular, United's protocols "effectively prevent claimants from choosing their own authorized representative to handle their claims submission and any subsequent appeal" and its uniform policy is to "den[y] claims and appeals submitted by out-of-network medical providers who are acting as authorized representatives of United's insureds." (*Id.*)

Plaintiffs submit that, as a fiduciary, United is required "to follow a comprehensive set of minimum requirements for employee benefit plan claims and appeal procedures under ERISA." (*Id.* at ¶¶22, 28.) In particular subparagraph (b)(4) of 29 C.F.R. 2560.503-1 (the "Claims Procedure Regulation") "expressly gives participants and beneficiaries the right to appoint authorized representatives to act on their behalf in connection with an initial claim for benefits as well as to act on their behalf in an appeal of an adverse benefit determination." (*Id.* at ¶28.) Plaintiffs contend that while a plan or a plan administrator "may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant," such procedures "cannot prevent claimants from choosing for themselves who will act as their representative or preclude them from designating an authorized representative for the initial claim, an appeal of an adverse benefit determination, or both." (*Id.* at ¶30.) Additionally, the procedures for designating authorized representatives must be included in the plan's Summary Plan Description or in a separate document that accompanies the Description. (*Id.* at ¶31.)

Notwithstanding those requirements, Plaintiffs allege that "United consistently and systematically refuses to recognize a duly-executed" DAR Form "submitted by its beneficiaries, particularly when those DAR Forms are executed in favor of the beneficiary's health care provider." (*Id.* at ¶32.) Thus,

4

Plaintiffs contend that United has an unreasonable "Uniform DAR Denial Policy."2 *Id.* Plaintiffs further allege that, in implementing that Policy,

> United utilized a template denial letter (the "DAR Denial Template"), stating that an appeal request cannot be processed on behalf of the beneficiary in question because the request either did not include the required authorization, the authorization submitted did not include all necessary information, or the authorization was not complete. The DAR Denial Template notes several categories of necessary information to be included in an acceptable DAR, but it does not provide any further information to the beneficiary or its representative of what specific categories of information are lacking from the DAR submitted.

(*Id.* at ¶33.) Plaintiffs submit that the DAR Denial Template violates the Claims Procedure Regulation because it (1) fails to provide the specific deficiencies, if any, in the rejected DAR Form; (2) fails to cite to the plan's claim procedures, including DAR Form requirements; and (3) fails to include a statement that the plan's claim procedures are furnished automatically, without charge, as a separate document. (*Id.* at ¶¶41, 56, 70, 85.)

The DAR Denial Template also includes a copy of United's own DAR Form, which, according to Plaintiffs, contains "an automatic expiration of the authorization contained therein one year from its execution." (*Id.* at ¶42, 57, 71, 86.) Plaintiffs submit that the automatic expiration is "the only significant substantive distinction between the United DAR Form and the DAR executed in favor" of Plaintiffs. (*Id.* at ¶42, 57, 71, 86.)

Following United's refusal to process the first-level appeals, Plaintiffs notified United that its

> failure to specifically identify the information lacking in the submission of [their] First Level Member Appeal violates a basic principle of ERISA- to afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

---

2    The terminology is Plaintiffs', and for the purpose of describing Plaintiffs' claims, I adopt it. Calling something a policy, however—Even With Initial Caps—does not make it so.

5

(*Id.* at ¶43, 58, 73, 87.) Nevertheless, Plaintiffs received the same DAR Denial Templates in response to their second-level appeals for each patient. (*Id.* at ¶44, 59, 73, 88.)

### b. Procedural History

Plaintiffs initiated this action on October 2, 2020. Their Complaint asserts that United's Uniform DAR Denial Policy violates ERISA and its accompanying regulations because it constitutes an "unreasonable procedure for determining whether an individual has been authorized to act on behalf of a claimant." (*Id.* at ¶¶95-106.) Additionally, Plaintiffs submit that the Policy "effectively mandates the use of the United DAR Form for health care providers, and especially ONET health care providers." (*Id.* at ¶102.) The United DAR Form, however, requires an "automatic expiration one-year from its execution – regardless of whether a beneficiary has exhausted all rights to a fair and full review of an adverse benefit determination." (*Id.*) In imposing such an expiration date, Plaintiffs contend, "United seeks to minimize the ability of ONET providers to assist their patients appeal improper benefit denials, including gross underpayments, by creating unreasonable obstacles specifically targeting ONET providers." (*Id.* at ¶103.)

The Complaint asserts three Counts:

**Count I** – Claim for relief pursuant to 29 U.S.C. § 1132(a)(1)(B));

**Count II** – Claim for relief pursuant to 29 U.S.C. § 1132(a)(3)(A), only to the extent that the Court finds injunctive relief unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B);

**Count III** – Claim for relief pursuant to 29 U.S.C. § 1132 (a)(3)(B), only to the extent that the Court finds equitable relief unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

(*Id.* at ¶¶116-26.)

Plaintiffs seek class certification, appointment as Class Representative, a declaratory judgment that United's Uniform DAR Denial Policy violates ERISA, and a permanent injunction barring United from engaging in the alleged

misconduct. (*Id.* at ¶¶A-G.) Plaintiffs also seek payment to "all class members, with interest, for the amount of ONET benefits denied as a result of United's ERISA violations," or, alternatively, an order compelling "United to reprocess all wrongfully denied appeals in compliance with plan terms and without the improper reductions." (*Id.*) As an alternative remedy, Plaintiffs seek an order compelling "United to make an equitable payment to Plaintiff and members of the Class." (*Id.*)

The United Defendants now collectively move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Discussion

### a. Legal Standards

#### i. Subject Matter Jurisdiction

Under Rule 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion is the vehicle for a motion to dismiss for lack of standing. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A Rule 12(b)(1) attack can be facial where, as here, the defendant "attacks the complaint on its face without contesting its alleged facts." *See Hartig Drug Co. v. Senju Pharms. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In such a case, the court considers only the allegations of the complaint and documents referred to therein, construed in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

#### ii. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations, but it must consist of "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when

"factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

### b. ERISA's Statutory and Regulatory Scheme

This is an ERISA case. ERISA imposes certain duties on those who manage employee benefit plans (fiduciaries), with the purpose of protecting participants and beneficiaries. *Sweda v. Univ. of Penn.*, 923 F.3d 320, 327 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020). When fiduciaries breach those duties, ERISA authorizes participants or beneficiaries to sue on behalf of the plan. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 773 (2020); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).

Importantly, for purposes of this motion, ERISA requires the Secretary of Labor to promulgate regulations governing the claims procedure process. *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 133–34 (3d Cir. 2015); 29 U.S.C. § 1133. Pursuant to that authority, the Department of Labor has "issued extensive regulations setting forth the minimum requirements for plan procedures pertaining to claims for benefits." *Id.*; 29 C.F.R. § 2560.503-1. At issue here is the requirement that "[e]very employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). In particular, Plaintiffs allege that United's Uniform DAR Denial Policy violates 29 C.F.R. § 2560.503-1(b)(4), which provides that claims procedures will be deemed reasonable only if

> [they] do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination. Nevertheless, a plan may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant, provided that, in the case of a claim involving urgent care, within the meaning of paragraph (m)(1) of this section, a health care professional, within the meaning of paragraph (m)(7) of this

section, with knowledge of a claimant's medical condition shall be permitted to act as the authorized representative of the claimant.

Plaintiffs bring their claims pursuant to 29 U.S.C. § 1132, which provides for civil enforcement of ERISA's provisions. First, Plaintiffs seek to recover under subsection (a)(1)(B), which entitles a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Alternatively, Plaintiffs bring their claims pursuant to subsection (a)(3)(A), which permits a participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(A). If those claims fail, Plaintiffs then assert a cause of action under subsection (a)(3)(B), which allows a participant, beneficiary, or fiduciary "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

### c. United's Challenge to Plaintiffs' Standing

#### i. Article III Standing

As a threshold matter, United submits that the Court should dismiss the Complaint for lack of subject matter jurisdiction because Plaintiffs have failed to establish Article III standing. (Br. at 17.) I agree.

Article III of the U.S. Constitution gives federal courts the power to hear "cases" and "controversies," U.S. Const. Art. III, § 2, a requirement which implies that a plaintiff must have "standing," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04, (1998). To have standing, a plaintiff must have (1) an injury (2) that is traceable to the defendant and (3) redressable by the suit. *Uzuegbunam v. Preczewski*, ––– U.S. –––, 141 S. Ct. 792, 797, 209 L.Ed.2d 94 (2021); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Injury in fact, "the first and foremost of standing's three elements," is a constitutional requirement. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016) (citation omitted). To establish injury in fact, Plaintiffs must show that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect [Plaintiffs] in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (citations omitted); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citation omitted) ("Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury.'"). Finally, "[p]articularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Spokeo*, 136 S. Ct. at 1548.

United submits that Plaintiffs' asserted claims are premised on bare procedural violations of ERISA and the Claims Procedure Regulation, rather than upon an improper denial of benefits. (Br. at 18-22.) Further, the Complaint does not allege that Plaintiffs were denied any payment *as a result of* United's allegedly unreasonable Uniform DAR Denial Policy. (*Id.* at 21.) United contends that such a procedural or technical violation does not constitute an injury in fact for purposes of Article III standing. (*Id.* at 20.) Moreover, because the alleged Uniform DAR Denial Policy did not *cause* the denial of the patients' benefit claims – that denial was allegedly the result of United's "low payment methodology"³ – Plaintiffs lack standing. (Br. at 18 (citing Compl. ¶¶38, 53, 67, 82).)

Plaintiffs submit that the Complaint does allege two concrete injuries: "(i) the denial of benefits, redressable with an award of benefits; and (ii) the denial of a full and fair review, redressable with equitable relief, that is, an order of remand with an accompanying inju[n]ction." (Opp. at 18.) Regarding the first claimed injury, Plaintiffs concede that the denial of benefits occurred because of United's allegedly improper payment methodology rather than the allegedly

---

³     The terminology, again, is Plaintiffs'.

10

improper DAR Policy. (*Id.* at 19 (citing Compl. ¶¶ 38, 53, 67, 83).) For example, for patient C.L., Atlantic Neuro submitted a claim for $119,080. (Compl. ¶38.) The Complaint asserts that when the claim was processed "United utilized an artificially low payment methodology" and covered only $64,147.26, leaving C.L. with the financial responsibility of $54,934.74." (*Id.*) The same allegations are made for the processing of F.L.'s and J.C.'s claims. That is, the Complaint asserts that "United utilized an artificially low payment methodology" in providing only partial payment. (*Id.* at ¶53, 82.) With respect to patient P.C., the Complaint asserts that United declined to provide any payment for the services rendered without asserting a reason for that complete denial. (*Id.* at ¶53.) The Complaint, however, does not challenge that payment methodology or provide any factual allegations about what that methodology might consist of. (*See generally* Compl.) Instead, the Complaint challenges what it calls United's Uniform DAR Denial Policy, which resulted in the denial of Plaintiffs' administrative appeals. Because United's claims determination occurred *before* its application of the alleged DAR Policy, the denial of benefits could not have *resulted from* the DAR Policy. Thus, the claimed injury – denial of benefits – cannot be traced to the challenged conduct – the Uniform DAR Denial Policy. Therefore, Plaintiffs, because of the manner in which they have limited the scope of their substantive claim, have not demonstrated Article III standing to seek relief for the denial of benefits.

I move on to Plaintiffs' second claimed injury, *i.e.,* the denial of full and fair review in the administrative appeals process. But the administrative process, as such, is not the source of a concrete injury. Plaintiffs could establish an injury only if further review of their claims would have resulted in the payment of additional benefits. That has not been alleged factually.

An instructive analogy is furnished by the United States Supreme Court's recent decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). There, two participants in defendant U.S. Bank's retirement plan filed a putative class action for alleged mismanagement of the plan. *Thole*, 140 S. Ct. at 1618. There

11

was no doubt that the plan fiduciaries had a duty to make prudent investment decisions. The plaintiffs' retirement plan, however, was a defined-benefit as opposed to defined-contribution plan. *Id.* This means that the "retirees received a fixed payment each month, and the payments d[id] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id.* The Supreme Court held that the plaintiffs lacked Article III standing to challenge the mismanagement of the fund's investments, because they had "received all of their monthly payments" and the outcome of the suit "would not affect their future benefit payments." *Id.* at 1619. In other words, if the plaintiffs were to lose the lawsuit, they would still receive the same monthly benefits. *Id.* And if they were to win, they would still receive the same monthly benefits. *Id.* Therefore, the Court concluded, the plaintiffs had "no concrete stake in th[e] lawsuit." *Id.*

The plaintiff in *Thole*, like those here, asserted a violation of an ERISA statutory right. In *Thole*, that was the right to have the plan's fiduciaries discharge their duties of loyalty and prudent investment. *Id.* at 1618. Here, Plaintiffs allege violation of their right under ERISA to a full and fair administrative appeal process after an adverse benefit determination. (*See* Opp. at 18.) However, Plaintiffs have not established that they were entitled to the denied benefits in the first place. In this connection, it is important to focus on what the Plaintiffs are alleging. The Complaint does *not* allege with any particularity that the patients were entitled to full coverage of Plaintiffs' services. Further, the Complaint does *not* challenge United's underlying payment methodology (other than giving it the pejorative title of "low payment methodology"). And, as noted, the denial of benefits occurred *before* United's application of its DAR Policy to the Plaintiffs' administrative appeals, the practice which is being challenged here. Thus, Plaintiffs *say* in their briefs that the case is all about denial of benefits, but they have not established how a victory in this Court – a declaration that United's Uniform DAR Denial Policy

violates ERISA – would entitle the Patients to a more favorable benefits determination.

Plaintiffs rely on *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) in arguing that they have standing to sue for injunctive relief based upon the invasion of an ERISA statutory right. (Opp. at 20.) In *Horvath*, the Third Circuit held that the plaintiff did not need to demonstrate actual harm to have standing to seek injunctive relief requiring that the defendant HMO "satisfy its statutorily-created disclosure or fiduciary responsibilities." 333 F.3d at 456. The Court noted that "with regard to injunctive relief, it is well-established that '[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Id.* (alteration in original) (quoting *RJG Cab, Inc. v. Hodel,* 797 F.2d 111, 118 (3d Cir.1986)). However, outside the context of required disclosures, in *Thole*, the Supreme Court reaffirmed the principle that "Article III standing requires a concrete injury even in the context of a statutory violation." 140 S. Ct. at 1620-21 (quoting *Spokeo,* 136 S.Ct. at 1549); *see also TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2205 (2021) ("Importantly, this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (quoting *Spokeo,* 136 S. Ct. at 1540). Indeed, in *Thole*, the Court rejected the retirees' argument that standing was conferred through ERISA's "general cause of action to sue for restoration of plan losses and other equitable relief" under 29 U.S.C. §§ 1132(a)(2), (3). *Id.* at 1620. The Court held that "the cause of action does not affect the Article III standing analysis" and noted that, in the past, it "rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo,* 136 S. Ct. at 1549); *see also Cottrell v. Alcon*

13

*Lab'ys*, 874 F.3d 154, 167 (3d Cir. 2017) ("Bare procedural or technical violations of a statute alone will not satisfy the concreteness requirement.").[4]

Plaintiffs maintain that "this case is about the wrongful denial of benefits." (Resp. 2 at 1.) However, Plaintiffs do not challenge the underlying reasons for United's adverse benefit determination. Instead, they challenge United's procedure for allowing (or not allowing) an authorized representative to appeal an adverse determination on behalf of a patient. The claimed injury (denial of benefits) occurred before that alleged wrong (the application of the Uniform DAR Denial Policy to deny administrative appeals). Plaintiffs fail to allege facts sufficient to establish that they were entitled to the benefits prior to United's application of its DAR Denial Policy.[5]

Based on the above, I find that Plaintiffs have not established Article III standing to assert their claims.[6]

---

[4] The Court excepted from its holding "suits to obtain plan information." *Id.* at 1620 n.1.

[5] Further detracting from the claim of injury is the Patients' evident entitlement to file an appeal directly, in their own names.

[6] United submitted a Notice of Supplemental Authority regarding the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). (Supp. Letter 2.) There, a putative class brought suit against a credit reporting agency for its failure to use reasonable procedures "to ensure the accuracy of their credit files." *TransUnion*, 141 S. Ct. at 2200. The Court held that only those individuals who had actually been harmed by the false information in their credit reports had standing to assert claims against the agency. *Id.* In particular, the Court held that the class members whose misleading files were distributed to third parties had demonstrated a concrete reputational harm and, therefore, established standing under Article III. *Id.* However, the class members whose files were not shared with third parties could not establish a concrete injury and did not have standing. *Id.* In a general sense, then, *Transunion* confirms that mere nonadherence to proper procedures may not give rise to a concrete injury.

      *ii.*    *ERISA Standing*

I nevertheless consider in the alternative the issue of whether Plaintiffs possess statutory standing under ERISA, because this Article III standing issue—like many such—is not free from doubt.[7]

ERISA provides employees covered by health insurance plans "with the right to sue to 'recover benefits due . . . under the terms of [the] plan.'" *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting 29 U.S.C. § 1132(a)(1)(B)). The right to sue "is limited to the 'participant' or 'beneficiary' under the plan." *Id.* A healthcare provider does not fall into either category. *Id.*; *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). However, in *North Jersey Brain & Spine Center v. Aetna, Inc.*, the United States Court of Appeals for the Third Circuit held that a valid assignment of benefits by a plan participant or beneficiary transfers to such provider the insured's right to payment and the insured's right to sue for that payment. 801 F.3d 396 (3d Cir. 2015); *Am. Orthopedic*, 880 F.3d at 450. In other words, a valid assignment may confer upon the provider standing to sue under ERISA.

United submits that Plaintiffs cannot bring suit under ERISA because they are not plan participants, beneficiaries, or fiduciaries, and there is no allegation that a valid assignment of benefits covers the claims at issue here. (Br. at 24.) Plaintiffs submit that they have standing under ERISA as "authorized representatives" or "attorneys-in-fact" for their patients. (Opp. at 23.) In particular, Plaintiffs point to the Claims Procedure Regulation, which expressly permits authorized representatives to bring administrative claims and appeals on behalf of those they represent. (*Id.*) "[F]or the provision to have any teeth," Plaintiffs contend, "an authorized representative also must be able

---

[7]    The issue which I have labeled "statutory standing" is sometimes viewed as a "zone of interests" analysis, in the context of the prudential component of constitutional standing. It is better viewed as implicating the question of whether the complaint states a claim under the relevant statute. *See Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

15

to bring litigation where, as here, the insurer improperly denies those appeals." (*Id.*)

The statutory standing relevant here, however, is standing to bring a federal action. Courts in this District have consistently held that the Claims Procedure Regulation applies only to internal appeals and not lawsuits in federal courts. *Cooperman v. Horizon Blue Cross Blue Shield of New Jersey*, No. 19-19225 (2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *5 n.5 (D.N.J. July 15, 2015); *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *5 n.5 (D.N.J. July 15, 2015). While the Claims Procedure Regulation discusses "the filing of benefit claims, notification of benefit determinations, and appeal of adverse determinations," it does not discuss the filing of a civil lawsuit. *See* 29 C.F.R. § 2560.503-1(b). It is not sufficient to merely posit that, unless the Regulation is stretched beyond its actual wording, it will not have "teeth."

I therefore hold, based on the plain language of the regulation and the repeated holdings of courts in this district, that the Claims Procedure Regulation does not itself confer standing to an authorized representative to assert an ERISA claim in court.[8] I am persuaded by those precedents, and also by the need for uniformity and predictability in the law, absent contrary

---

8   United submitted a Notice of Supplemental Authority on this point as well. (Supp. Letter 1 at 1-2.) After briefing in this matter, two more courts in this District rejected the theory that the Claims Procedure Regulation grants medical providers the authority to bring litigation on behalf of patients as designated authorized representatives. *See Alkon on Behalf of GD v. Cigna Health & Life Ins. Co.*, No. 20-2365, 2021 WL 822789, at *4 (D.N.J. Mar. 4, 2021) ("This Court has repeatedly held that this regulation applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals."); *Prestige Inst. for Plastic Surgery, P.C. on behalf of S.A. v. Aetna Life Ins. Co.*, No. 20-10371, 2021 WL 1625117, at *3 (D.N.J. Apr. 27, 2021) (citing *Alkon* and holding that the plaintiff did not have standing to assert an ERISA claim on behalf of its patient as an authorized representative).

16

guidance from the Court of Appeals. I will grant Defendants' motion to dismiss on that basis.

Plaintiffs request leave to file an amended complaint alleging that they possess powers of attorney to act on behalf of their Patients. (Opp. at 26 n.3.) Those POAs, they submit, suffice to confer statutory standing under ERISA. (*Id.*) Such an amendment, however, would be futile, because "medical practices cannot act as attorneys-in-fact under the [New Jersey Revised Durable Power of Attorney Act, N.J.S.A. 46:2B-8.1 *et seq.*]." *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *8 (D.N.J. Apr. 27, 2020 ("Because Plaintiffs cannot be attorneys-in-fact, as a matter of law, the POAs Plaintiffs use here do not convey Plaintiffs standing to assert claims on any patient's behalf.").[9] I set aside the objection that a footnote in an opposition brief is not a proper means of filing a motion to amend the complaint, and I find that the proposed amendment would be futile.

---

9     Judge Vazquez explained that state-law limitation in *Somerset Orthopedic*:

> In New Jersey, a power of attorney is governed by the Revised Durable Power of Attorney Act ("RDPAA"), N.J.S.A. 46:2B-8.1, *et seq.* The Act provides that "the principal authorizes another *individual or individuals or a qualified bank* ... known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent." N.J.S.A. 46:2B-8.2(a) (emphasis added). Agent is defined as "the person authorized to act for another person pursuant to a power of attorney," and banking institution "includes banks, savings banks, savings and loan associations and credit unions." N.J.S.A. 46:2B-10. Based on the plain language of the statute, it does not appear that Plaintiffs can be attorneys-in-fact because they are neither individuals nor banking institutions.

2020 WL 1983693 at *7.

### III. Conclusion

For the reasons set forth above, I will grant United's motion (DE 8) to dismiss the Complaint. An appropriate order follows.

Dated: July 22, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**