## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ATLANTIC NEUROSURGICAL SPECIALISTS P.A.,** *et al.*

    **Plaintiffs,**

    **v.**

**UNITED HEALTHCARE GROUP INC.,** *et al.*

    **Defendants.**

Civ. No. 20-13834 (KM) (JBC)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Two medical providers, Atlantic Neurosurgical Specialists, P.A. ("Atlantic Neuro") and American Surgical Arts, P.C. ("American Surgical"), along with physicians Ronald P. Benitez, M.D. ("Dr. Benitez"), Yaron A. Moshel, M.D. ("Dr. Moshel"), and Sean Bidic, M.D. ("Dr. Bidic"), brings this action on behalf of patients, F.L., P.T., and J.C. (the "Patients").[1] The Patients were insured by health plans issued by one of the following defendants: UnitedHealth Group Inc.; United Healthcare Services, Inc.; United Healthcare Insurance Company; United HealthCare Services LLC; Oxford Health Plans, LLC; or Oxford Health Insurance, Inc. (collectively, "United").

    Before the Court is Plaintiffs' motion to amend the complaint (DE 23), which is accompanied by a proposed first amended complaint ("PFAC"). For the following reasons, the motion to amend is **DENIED** without prejudice.

---

[1] Atlantic Neuro and American Surgical bring this action as "authorized representatives" of the Patients, while the physician plaintiffs bring this action on behalf of the Patients as "attorneys-in-fact," pursuant to written powers of attorney.

## I.   BACKGROUND

The Court presumes familiarity with the nature and history of this litigation. I focus on the facts most relevant to Plaintiffs' pending motion to amend the complaint.[2]

### A. Allegations of the Original Complaint and Prior Dismissal

Plaintiffs' Attempts to Appeal Patients' Adverse Benefits Determination

Atlantic Neuro brought this action on behalf of itself and patients C.L., F.L., and P.T. (Compl. ¶5),[3] who all received emergency treatment from Atlantic Neuro and subsequently received an adverse benefit determination by United related to their treatment. (Compl at ¶¶ 35, 38, 50, 53, 65, 67.) Similarly, American Surgical brought this action on behalf of itself and J.C., who also received an adverse benefit determination from United following service rendered by American Surgical. (Compl. at ¶¶ 9, 80, 82.)

Both Atlantic Neuro and American Surgical, as purported authorized representatives, sought to pursue first- and second-level administrative appeals contesting the amounts paid by United to the respective patients. (Compl. at ¶¶ 39, 43, 54, 58, 68, 72, 83, 87.)  United declined to process these appeals, however, because the purported designation of authorized representative form ("DAR Form") submitted on behalf of each patient lacked the required information. (Compl. at ¶¶ 40, 44, 55, 59, 69, 73, 84, 88.)

Atlantic Neuro and American Surgical, on behalf of themselves and C.L., F.O., P.T., and J.C. (the "Initial Plaintiffs"), filed the Initial Complaint against United, submitting that its procedures for designating an authorized representative violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, and its accompanying regulations because it constitutes an "unreasonable procedure for determining whether an

---

[2]      "DE __" refers to the docket entry numbers in this case. "Compl." refers to the initial complaint. "PFAC" refers to the proposed first amended complaint, located at DE 23-2, Ex. 1.

[3]       The PFAC removes all allegations pertaining to patient C.L.

individual has been authorized to act on behalf of a claimant." (Compl. ¶¶ at 95-106.) The Initial Plaintiffs also sought class certification of similarly-situated insureds whose appeals of adverse benefit determinations were denied by United. (Compl. ¶¶ at A-G.)

United DAR Policy

United insures and administers health plans ("United Plans") that are governed by ERISA. To that end, United "receives, reviews, and processes benefits payments for services rendered by in-network and out-of-network medical providers like Atlantic Neuro and American Surgical." (Compl. at ¶2.) According to the Initial Plaintiffs, ERISA and regulations promulgated thereunder, entitled beneficiaries of United Plans "to designate an authorized representative to aid them in the initial submission of an insurance benefits claim and then in any appeal following an adverse benefits determination." (Compl. at ¶3.) The Initial Complaint asserts that "United has a unform practice and procedure in place that makes it unreasonably difficult for medical providers to obtain benefits for covered claims." (Compl. at ¶4.) Specifically, United's protocols "effectively prevent claimants from choosing their own authorized representative to handle their claims submission and any subsequent appeal" and its uniform policy is to "den[y] claims and appeals submitted by out-of-network medical providers who are acting as authorized representatives of United's insureds." (Compl. at ¶4.)

The Initial Complaint alleges that, as a fiduciary, United is required "to follow a comprehensive set of minimum requirements for employee benefit plan claims and appeal procedures under ERISA." (Compl. at ¶¶ 22, 28.) Specifically, subparagraph (b)(4) of 29 C.F.R. 2560.503-1 (the "Claims Procedure Regulation") "expressly gives participants and beneficiaries the right to appoint authorized representatives to act on their behalf in connection with an initial claim for benefits as well as to act on their behalf in an appeal of an adverse benefit determination." (Compl. at ¶28.) While a plan or a plan administrator "may establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant," the Initial

3

Complaint argues that such procedures "cannot prevent claimants from choosing for themselves who will act as their representative or preclude them from designating an authorized representative for the initial claim, an appeal of an adverse benefit determination, or both." (Compl. at ¶30.)[4]

Despite these requirements, the Initial Complaint alleges that "United consistently and systematically refuses to recognize a duly-executed" DAR Form "submitted by its beneficiaries, particularly when those DAR Forms are executed in favor of the beneficiary's health care provider." (Compl. at ¶32.) Accordingly, the Initial Complaint asserts that United has an unreasonable "Uniform DAR Denial Policy."[5] The Initial Complaint also alleges that, in implementing that Policy:

> United utilized a template denial letter ("the DAR Denial Template"), stating that an appeal request cannot be processed on behalf of the beneficiary in question because the request either did not include all necessary information, or the authorization was not complete. The DAR Denial Template notes several categories of necessary information to be included in an acceptable DAR, but it does not provide any further information to the beneficiary or its representatives of what specific categories of information are lacking from the DAR submitted.

(Compl. at ¶33.) The Initial Plaintiffs assert that the DAR Denial Template violates the Claims Procedure Regulation because it (1) fails to provide the specific deficiencies, if any, in the rejected DAR Form; (2) fails to cite to the plan's claim procedures, including DAR Form requirements; and (3) fails to include a statement that the plan's claim procedures are furnished automatically, without charge, as a separate document. (Compl. at ¶¶ 41, 56, 70, 85.) Finally, the Initial Complaint notes that the DAR Denial Template

---

[4]    The Initial Complaint also alleges that the procedures for designating authorized representatives must be included in the plan's Summary Plan Description or in a separate document that accompanies the Description. Compl. at ¶31.

[5]    As I expressed in my opinion dismissing the initial complaint, this terminology seems to be Plaintiffs' invention. For purposes of describing Plaintiffs' claims, I adopt their terminology, without implying that such a policy exists.

includes a copy of United's own DAR Form, which contains "an automatic expiration of the authorization contained therein one year from its execution." (Compl. at ¶¶ 42, 57, 71, 86.) The Initial Complaint argues that the automatic expiration is "the only significant substantive distinction between the DAR Form and the DAR executed in favor" of Plaintiffs. (Compl. at ¶¶ 42, 57, 71, 86.)

<u>Dismissal of the Initial Complaint</u>

I filed a decision dismissing the Initial Complaint because it did not sufficiently establish standing under Article III and ERISA. (DE 21 at 9-17.)

Concerning Article III standing, I rejected the Initial Complaint's two alleged theories of injury—that being (1) "the denial of benefits, redressable with an award of benefits"; and (2) the "denial of a full and fair review, redressable with … an order of remand with an accompanying injunction." (DE 21 at 10; DE 13 at 18.)

With respect to the first theory of injury, I noted that the Initial Plaintiffs conceded "that the denial of benefits occurred because of United's allegedly improper payment methodology rather than the allegedly improper DAR Policy." (DE 21 at 10-11; DE 13 at 19 (citing Compl. ¶¶ 38, 53, 67, 83).) I also highlighted that the Initial Complaint challenged United's DAR Denial Policy—resulting in United denying the Initial Plaintiffs' administrative appeals—and *not* United's payment methodology. (DE 21 at 11.) Accordingly, I found that United's DAR Policy was not the cause of the Plaintiffs' denial of benefits, because "United's claims determination occurred *before* its application of the alleged DAR Policy." (DE 21 at 11(emphasis in original).)

As to the second claimed injury—*i.e.*, the denial of full and fair review in the administrative appeals process—I stated that, for similar reasons, the administrative process itself was not the source of any concrete injury. (DE 21 at 11.)  Instead, the Initial Plaintiffs could only establish an injury "if further review of their claims would have resulted in the payment of additional benefits." (DE 21 at 12.)

5

Similarly, I held that the Initial Plaintiffs failed to establish "that they were entitled to the denied benefits in the first place." (DE 21 at 12.) Notably, the Initial Complaint (1) did *not* allege with any particularity that the patients were entitled to full coverage of Atlantic Neuro and American Surgical's services; and (2) did *not* challenge United's underlying payment methodology. (DE 21 at 12.) Therefore, the Initial Complaint failed to establish how a declaration that United's appeals process (or what plaintiffs call the "Uniform DAR Denial Policy") violates ERISA would entitle the Patients to a more favorable benefits determination. (DE 21 at 12-13.)

After finding that Article III standing was lacking, I considered whether the Initial Plaintiffs possessed statutory standing under ERISA. (DE at 15.) The Initial Plaintiffs argued that they had ERISA standing as authorized representatives or attorneys-in fact for their patients pursuant to the Claims Procedure Regulation. That Regulation, they argued, permits authorized representatives to bring administrative claims and appeals on behalf of those they represent. (DE 21 at 15; DE 13 at 23.) However, I noted that courts in this District have routinely held "that the Claims Procedure Regulation applies only to internal appeals and not lawsuits in federal courts." (DE 21 at 16.) Therefore, "absent contrary guidance from the Court of Appeals," I found that Initial Plaintiffs did not have standing under ERISA and granted Defendants' motion to dismiss on that additional basis. (DE 21 at 16-17.)[6]

---

[6]    I also rejected Plaintiffs' request for leave to file an amended complaint alleging that they possessed powers of attorney to act on behalf of their Patients. (DE 21 at 17.) I found that such an amendment would be futile because "medical practices cannot act as attorneys-in-fact under the [New Jersey Revised Durable Attorney Act, N.J. Stat. Ann. 46:2B-8.1 *et seq.*]." DE 21 at 17 (citing *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *8 (D.N.J. Apr. 27, 2020)).

### B. New Factual Allegations

The PFAC, filed after the Initial Complaint was dismissed by this Court, contains numerous new allegations. These, according to the Plaintiffs, remedy the deficiencies of the Initial Complaint.

First, regarding Article III standing, the Plaintiffs argues that the PFAC "details with particularity the substantive bases upon which their benefits were denied and the grounds for [Plaintiffs'] respective challenges of the [at-issue] adverse benefit determinations," utilizing the administrative appeal process mandated pursuant to the Claims Procedure Regulation. (DE 23-1 at 1-2; PFAC at ¶¶ 44, 62, 81.) Therefore, the Plaintiffs argue, the PFAC more explicitly alleges that "each United member was denied the opportunity to either (i) have the benefit denials in question overturned on appeal; or (ii) develop a robust administrative record for a reviewing court to scrutinize." (DE 23-1 at 2; PFAC at ¶¶ 51-51, 69-70, 90-91.)

Second, concerning ERISA standing, the PFAC now adds Drs. Benitez, Moshel, and Bidic as plaintiffs asserting claims on behalf of F.L., P.T., and J.C. respectively, as attorneys-in-fact. The PFAC "attaches notarized Durable Power of Attorney ["POA"] executed in favor of each doctor by their patient as an exhibit." These POAs, Plaintiffs argue, fully comply with the New Jersey Revised Durable Power of Attorney Act, N.J. Stat. Ann. 46:2B-8.1-17 ("RDPSAA"). (DE 23-1 at 3; PFAC at ¶¶ 41, 59, 78.)[7]

After stating the standard of review, I address each of those arguments.

## II.   DISCUSSION

### A. Standard of Review

Generally, motions to amend are governed by Federal Rule of Civil Procedure 15(a), which allows amendments either as a matter of right within a certain time limit or thereafter "with the opposing party's written consent or the

---

[7]     The Amended Complaint still asserts claims on behalf of both Atlantic Neuro and Atlantic Spine "as 'authorized representatives' to preserve the issue on appeal." DE 23-1 at 3.

court's leave." Fed. R. Civ. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, courts "have shown a strong liberality … in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419, 425 (3d. Cir. 1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)). On a motion to amend, the court will consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and (5) futility of the amendment." *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Futility" means that the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.3d 858, 864 (3d Cir. 1984). The standards governing a rule 12(b)(6) motion are well known, have been stated in the Court's prior opinions, and therefore need not be stated in detail here. In brief, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As applicable here, futility has a jurisdictional component, and to that extent is equivalent to a "facial" motion to dismiss under Rule 12(b)(1). *See generally Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

**B. Analysis**

United does not rely on the Rule 15 factors of delay or prejudice, but argues that the PFAC should be rejected as futile. (DE 26.) For present purposes, then, the motion to amend is equivalent to a motion to dismiss.

**1. Article III Standing/Failure to State Claim**

**(a) Parties' contentions**

Plaintiffs argue that the PFAC alleges a sufficient injury-in-fact, thus establishing Article III standing. In their view, the PFAC now summarizes "how United's initial adverse benefit determinations were wrongful" and articulates the arguments "Plaintiffs unsuccessfully sought to assert through the administrative appeal process mandated by ERISA." (DE 23-1 at 9; PFAC at ¶44, 62, 81.)

In opposition, United asserts that the PFAC still fails to establish Article III standing. First, United argues that the PFAC's new allegation—that the United DAR Review Policy prevented the Patients from choosing their own authorized representative and from being able to "successfully appeal for the benefits they were entitled to under their plans, or to alternatively develop a robust administrative record for a reviewing Court to scrutinize"—is no different from the alleged "denial of full and fair review" that this Court previously denied as a basis for Article III standing. (DE 26 6-7, citing *Condry v. UnitedHealth Grp., Inc.*, _ F. App'x_, 2021 WL 4225536, at *3 (9th Cir. Sept. 16, 2021)).

Second, United asserts that the Plaintiffs' new allegations concerning the Patients' plans does "not improve [P]laintiffs' fundamental challenge to United's purported 'Uniform DAR Denial Policy.'" (DE 26 at 7.) Specifically, United argues that the PFAC is devoid of the "factual allegations necessary to make out a claim that United's benefit determinations contravened the terms of the relevant plans." (DE 26 at 7-8.)

Third, United contends that irrespective of the PFAC's new allegations, the fact that the at-issue denial of benefits "occurred *before* United's application of its DAR Policy to the Plaintiffs' administrative appeals," means that the challenged policy did not cause Plaintiffs' harm. (DE 26 at 8.)

#### (b) Analysis

The new allegations in the PFAC do not rectify the shortcomings of the Initial Complaint. It is perhaps debatable whether they barely clear the standing threshold, but in either case they fail to state a claim. That deficiency, however, appears to be one that could be rectified by a further amendment.

The PFAC fails to allege facts sufficient "to establish that [the Patients] were entitled to the benefits *prior to* United's application of its DAR Denial Policy." (*See* DE 21 at 14 (emphasis added).) Because the PFAC is bereft of facts supporting a sufficiently alleged claim for the improper denial of benefits, the logical conclusion is that Plaintiffs cannot establish (1) that the Patients were entitled to benefits at all; and (2) that "a victory in this Court—a declaration that United's Uniform DAR Denial Policy violates ERISA—would entitle the Patients to a more favorable benefits determination." (*See* DE 21 at 12-13.)

With respect to F.L. and P.T., the PFAC alleges an entitlement to additional reimbursement because: (1) the insurance card contained the MultiPlan "shared savings" logo, implying that Atlantic Neuro was entitled to be reimbursed at 70% of its billed charges for treating United Members (via its shared saving program agreement with MultiPlan) and to waive any balance billing (except for applicable deductible and co-insurance amounts) pursuant the terms of [the plan]; (2) "because the services rendered … were emergent in nature, United was obligated under both [the] plan and New Jersey law to provide benefits at a level consistent with [F.L. and P.T.] having receiv[ed] care from a participating provider in United's network"; and (3) "under the terms of [the] plan, United was obligated to pay Atlantic Neuro 100% of its usual, customary, and reasonable ("UCR") charges." (PFAC at ¶¶ 44, 62.)[8]

---

[8]    Moreover, with respect to P.T. specifically, the PFAC alleges that P.T. was entitled to additional reimbursement because: (1) "United authorized the services in advance, and therefore was required to pay the claims under both the terms of P.T.'s plan and both federal and New Jersey pursuant to the "'GAP exception' manifest in its pre-authorization of services"; and (2) "under the terms of P.T.'s plan, United was obligated to negotiate a rate with Atlantic Neuro." PFAC at ¶62.

With respect to J.C., the PFAC alleges an entitlement to additional reimbursement because (1) the payment made to American Surgical by United for Dr. Bidic's services was not consistent with the definition of "Eligible Expenses" under J.C.'s plan, which references United's website where FAIRHealth is identified as the applicable pricing methodology …, but FAIRHealth is not what was used to price the payment United issued for Dr. Bidic's services"; (2) "the payment made to American Surgical by United for Dr. Bidic's services was not consistent with the WHCRA in that J.C. was left with an excessive out-of-pocket obligation rendering coverage under her plan for post-mastectomy breast reconstruction"; and (3) "because there was no adequate in-network surgeons available to perform the procedure J.C. chose to undergo, United was obligated under New Jersey law to limit J.C.'s out-of-network cost exposure in her in-network cost-sharing amounts under her plan." (PFAC at ¶ 81.)

Finally, as to all three patients, the PFAC alleges that by failing to pay the benefits due to them under their plans, and by failing to provide them with a full and fair review of its adverse benefit determinations through the application of the Uniform DAR Denial Policy, "United wrongfully denied [them] benefits to which [they] were entitled and the ability to successfully appeal for those benefits under [their] plan[s], or to alternatively develop a robust administrative record for a reviewing Court to scrutinize when determining whether or not United's claim and appeal adjudications were consistent with the terms of [their] plan[s], and also federal and state laws governing coverage" of the at-issue services. (PFAC at ¶¶ 51, 62, 81.)

I therefore look to whether the PFAC adequately alleges a wrongful denial of benefits to which these patients were entitled. The PFAC fails to identify or quote any specific plan provision in support of the assertion that the Patients were improperly denied benefits under their respective plans. The Court is left to speculate as to what specific United plans and provisions are implicated. For example, Plaintiffs fail to cite or quote a specific plan provision: (1) entitling Atlantic Neuro payment of benefits "to be reimbursed at 70% of its billed

charges for treating United Members"; (2) requiring United to "waive any balance billing of [F.L. and P.T.] (except for applicable deductible and co-insurance amounts);" or (3) requiring United to provide benefits at a level consistent with the care F.L. and P.T. received from participating providers in United's network, and pay Atlantic Neuro "100% of its UCR charges. (*See* PFAC at ¶¶ 44, 62.) Similarly, while the Plaintiffs invoke both federal and state law, the PFAC fails to identify the specific statutory provisions that give rise to United's alleged obligations to these patients.[9] I do not say this could not be done, but it has not been done here.

United cites *Condry v. UnitedHealth Grp., Inc.*, _ F. App'x_, 2021 WL 4225536, at *3 (9th Cir. Sept. 16, 2021), which I find persuasive. There, the Ninth Circuit vacated the district court's summary judgment in favor of two individual plaintiffs on their full-and-fair-review claims. *Id.* at *3. Because United presented undisputed evidence demonstrating that these plaintiffs were not entitled to reimbursement, the Ninth Circuit held that "a ruling in favor of … their full-and-fair-review claims and an order directing United to send them a clearer denial letter could not possibly lead to reimbursement." *Id.* The court explained that any harm resulting from "a confusing denial letter [was] no more than a 'bare procedural violation.'" *Id.* (citations omitted).  However, the court stated that "a bare procedural violation of ERISA, 'without some concrete interest that is affected by the deprivation,' does not satisfy the injury-in-fact requirement of Article III standing." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016). *Condry,* a summary judgment case, involved the insurer's submission of proof that the insureds were not entitled to benefits; the

---

[9]    The Court additionally notes that although the PFAC alleges that under J.C.'s plan, FAIRHealth is identified as the applicable pricing methodology, a review of the cited website makes it patently clear that FAIRHealth is only "a cost estimator tool intended to provide [insureds] with a reasonable estimate" of health care costs. In fact, United clearly state that FAIRHealth "is not intended to be a guarantee of [insureds'] costs or benefits" and that insureds' "actual costs may be different, based on [the] personal health situation and [the insureds'] particular health plan's coverage terms." https://www.uhc.com/legal/required-state-notices/new-jersey/fairhealth-notice-nj

implication, in this motion to dismiss context, is that the insureds must adequately allege that they were entitled to benefits.

In their reply brief, Plaintiffs cite several improper-denial cases—including *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, No. 16-CV-5265 (JPO), 2021 WL 4263713 (S.D.N.Y. Sept. 20, 2021)—for the proposition that the mere denial of benefits is a concrete injury for Article III standing. (*See* DE 28 at 3-5.) These cases are inapposite; plaintiffs in those cases actually challenged the insurer's basis for denying coverage by adequately asserting claims under ERISA for failure to pay benefits to which they were entitled under their plans.[10] These plaintiffs appear to have studiously avoided doing so.

Here, the PFAC general alleges (but does not claim) improper denial of benefits, but hews to its generalized objective of reforming United's review procedures. Plaintiffs principally "seek a remand of the claims for the full and fair review United failed to provide" under its alleged Uniform DAR Denial Policy. (*See* DE 28 at 10.) For such a procedural challenge, injury for Article III purposes is not satisfied by merely alleging that procedures were inadequate or that benefits were not received; the complaint must allege facts sufficient to establish that further review of Plaintiffs' claims *would have resulted* in the payment of additional benefits. This PFAC falls short of a sufficient allegation

---

[10]     *See, e.g.*, *Med. Soc'y*, 2021 WL 4263713 (challenging United's policy denying coverage of facility fees for office-based surgery, which plaintiffs alleged violated ERISA); *Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529, 535 (8th Cir. 2020) (arguing that the health insurer abused its discretion by basing its reimbursement decision on undisclosed administrative polices that lacked substantive support); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) (challenging denial of benefits for failing to obtain the precertification required for nonemergency transportation); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 186 (5th Cir. 2015) (suing health insurer for breach of healthcare plans and arguing that insurer failed to comply with plan terms and underpaid for covered services); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1287 (9th Cir. 2014) (asserting improper denials of benefits and breach of fiduciary duty claims).

that the denial of benefits was improper under the plan, and that a proper review process would therefore have resulted in the payment of further benefits.

In short, the PFAC is an inadequate attempt to retrofit the allegations of a complaint that had succeeded only in asserting a bare procedural violation. The Court recognizes the strategic considerations that may be involved in attempting to plead a claim on grounds generally applicable to a putative class. In their desire to reform insurers' procedures, however, Plaintiffs and their counsel cannot lose sight of the bedrock issue, *i.e.,* the denial of benefits to particular insureds who were entitled to them. Plaintiffs have responded to the Court's prior decision by gesturing at the possibility of a wrongful denial of benefits, but have not adequately alleged one.

It is fruitless, then, to debate whether the new allegations have advanced the complaint to the point where standing is barely established, but a claim is nevertheless not stated. Dismissal is required either way. I say "fruitless" because I believe that the flaw in the named plaintiffs' statement of their entitlement to benefits is a pleading flaw, not a substantive one, and that it could be cured by amendment.

Accordingly, the complaint is dismissed for failure to allege entitlement to benefits, on Rule 12(b)(1) standing but alternatively on Rule 12(b)(6) substantive grounds. The dismissal is without prejudice to further amendment.

## 2. ERISA Standing

I reach the issue of statutory standing for the guidance of the Plaintiffs, in the event that they should they seek to amend their complaint further. I hold that the statutory standing flaw in the original complaint has been remedied in the PFAC, and should not present a problem going forward.

Plaintiffs argue that the PFAC remedies a flaw identified in the Court's prior decision regarding the powers of attorney granted to the doctors. Now, Plaintiffs say, there is statutory standing under ERISA because Drs. Benitez (F.L.), Moshel (P.T.), and Bidic (J.C.) assert claims on behalf of their patients as

"attorneys-in-fact," in each case attaching a POA that complies with the terms of the RDAA. (DE 23-1 at 11-12; citing PFAC at ¶¶ 41, 59, 79.)

United proffers two primary reasons that the PFAC still fails to establish ERISA standing. First, United argues that this Court already held that "it would be futile for … Atlantic Neuro and American Surgical, as medical practices, to seek to proceed as attorneys-in-fact of their patients." (DE 26 at 9.) Second, United argues that the individual physician plaintiffs are asserting claims in their own names—as opposed to the Patients' names—therefore improperly conflating "an assignment with a power of attorney, which the Third Circuit has held are entirely distinct." (DE 26 at 9-10 (citing *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018)).)

To the extent that the medical practices, Atlantic Neuro and American Surgical, seek to assert claims as attorneys-in-fact, the Court reiterates its prior holding that "medical practices cannot act as attorneys-in fact under the [RDPAA]." (DE 21 at 17 (citing *Somerset Orthopedic*, 2020 WL 1983693 at *8).) United acknowledges this ruling, and states that it has reasserted this theory solely to preserve it for appeal. (*See* DE 23-1 at 3.)

As to the individual doctors, however (*i.e.,* Drs. Benitez, Moshel, and Bidic), I hold that the PFAC properly alleges that they are asserting claims "as attorneys-in-fact" on behalf of their patients, pursuant to valid POAs. *See, e.g.,* PFAC (caption). The PFAC explicitly (1) alleges that the physician plaintiffs are asserting claims as attorneys-in-fact on behalf of the Patients, pursuant to duly executed POAs and (2) states the specific dollar amount for which each Patient was held responsible. In *Somerset Orthopedic*, involving the almost identical scenario, District Judge Vazquez of this Court found such allegations to be sufficient. No. CV 19-8783, 2021 WL 3661326, at *5 (D.N.J. Aug. 18, 2021) ("Here … the SAC pleads that Vessa and Dwyer are asserting claims as attorney-in-fact for certain patients. Further, for each patient at issue, the SAC

sets forth the amount of money for which the patient was responsible to pay after Defendants' payments.") I adopt that well-reasoned holding.

United suggests that I reject Judge Vazquez's decision as inconsistent with the Third Circuit's decision in *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018). I disagree. *Am. Orthopedic* discussed the effect of an anti-assignment clause and the distinction between an assignment and a power of attorney. It held, however, that the insurer had "waived its arguments concerning the power of attorney by failing to raise them in its opening or reply brief." *Id.* at 455; *see also Enlightened Sols., LLC v. United Behav. Health*, No. 118CV06672NLHAMD, 2018 WL 6381883, at *5 (D.N.J. Dec. 6, 2018) (stating that one "teaching" of the Third Circuit's decision in *Am. Orthopedic* is that "a valid anti-assignment clause does not preclude a medical provider who holds a valid power of attorney from asserting the participant's claims against the ERISA plan.")[11] It cannot be read to preclude

---

[11]   Judge Vazquez viewed the issue similarly:

The Third Circuit, however, did not ultimately address whether the power of attorney at issue was valid or conveyed standing because the Circuit concluded that the appellant had waived its arguments concerning the power of attorney. *Id.*; *see also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228 (3d Cir. 2020) (recognizing that the Circuit "left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf"). But courts that have addressed this issue after American Orthopedic appear to acknowledge that healthcare provider may have standing to assert claims on behalf of a patient through a POA, even if the plan at issue contains an anti-assignment clause. *See, e.g., Med-X Glob., LLC v. Azimuth Risk Sols.*, LLC, No. 17-13086, 2018 WL 4089062, at *2 n.2 (D.N.J. Aug. 27, 2018) (noting that the discussion about POAs in *American Orthopedic* was dicta but "we see no reason to doubt the solidity of the proposition" that a POA can confer standing); *Enlighted Sols., LLC v. United Behavioral Health*, No. 18-6672, 2018 WL 6381883, at *5 (D.N.J. Dec. 6, 2018) (concluding that "a valid anti-assignment clause does not preclude a medical provider who holds a valid power of attorney from asserting the participant's claims against the ERISA plan").

*Somerset Orthopedic*, 2021 WL 3661326, at *4.

the physician plaintiffs from asserting claims on behalf of the Patients in the manner alleged in the PFAC.

To be sure, United is right to point out that the assignment and POA theories are distinct. The PFAC adequately alleges the latter with respect to the doctors. The PFAC identifies the patient claiming benefits, alleges factually that each POA complied with the RDPAA's procedural requirements (which United does not challenge), and states the amount that each Patient remained responsible to pay after United's reimbursement.

Accordingly, I hold that the PFAC adequately pleads that there is statutory standing for the physicians to assert ERISA claims on behalf of F.L., P.T., and J.C. by virtue of the duly executed POAs.

## III.   CONCLUSION

Plaintiffs' motion to amend is **DENIED**. The denial of Plaintiffs' motion to amend is without prejudice to the filing of another motion to amend, accompanied by a proposed second amended complaint, within 30 days.

Dated: March 31, 2022

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**